FILED
2008 Feb-27  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATE DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SAUL CRUZ, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. |
| CINRAM INTERNATIONAL, INC.; CINRAM, INC.; TRI STAFFING; BLAIR STAFFING AND LOGISTICS; and THE JOB CENTER; | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

1.     Plaintiff, Saul Cruz, on behalf of himself and all others similarly situated, by counsel, complains of the Defendant, Cinram, Inc., a Delaware corporation, (hereinafter "Cinram") as follows:

## SUMMARY OF CLAIMS

2.     This is a class action under the Racketeer Influenced and Corrupt Organizations ("RICO") act, 19 U.S.C. § 1961 *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. §§ 2000e.  The members of the class are current and former employees of Cinram whose wages were depressed by Cinram's employment and harboring of a large number of unauthorized workers, *i.e.*, workers who are not authorized to be employed in the United States because the workers are not citizens of the United States and have not obtained appropriate authorization to be employed.

3.     Plaintiff seeks injunctive and monetary relief on behalf of Cinram's hourly workers who are citizens of the United States or who are otherwise authorized to be employed in the United States.

4.     Cinram International, Inc. is one of the World's largest manufacturers of pre-recorded DVD, CD-Audio and CD-ROM technology.  Cinram International, Inc. is the parent company of Cinram, Inc., in Huntsville, Alabama.

5.     Cinram, Inc., in its Alabama facility, manufactures pre-recorded DVDs.

6.     Cinram, Inc., in its Alabama facility engages in the knowing employment and harboring of unauthorized workers.  By employing and harboring unauthorized workers, Cinram is able to reduce labor costs by depressing wages for its hourly workers and discouraging claims for workers compensation.  Cinram, Inc. locates and engages unauthorized workers by and through its agreements with Blair Staffing, Tri Staffing, and The Job Center who refer employees to Cinram for employment.   The practice causes damage to the members of the class as well as the unauthorized workers themselves.  The unauthorized workers themselves suffer from the practice because they are paid substandard wages, are deprived of benefits, and are subject to terms and conditions of employment which are oppressive and unfair but which they are unable to address individually or

collectively due to fears and concerns of arrest or deportation if discovered by immigration authorities.

7.    Cinram's conduct violates the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, as more fully set forth below.

## PARTIES, JURISDICTION AND VENUE

8.    Plaintiff, Saul Cruz, is a citizen of Alabama and resides in the Northern District of Alabama.  He is eligible to be employed in the United States and is a former employee of Cinram.

9.    Defendant Cinram is a Delaware corporation, with its principal place of business in Richmond, Indiana, doing business in several states, including in Huntsville, Alabama, at 4905 Moores Mill Road, Huntsville, Alabama, 35811. Defendant's registered agent for service of process is The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama, 36109.

10.    Defendant Blair Staffing and Logistics ("Blair") is an Alabama corporation, with its principal place of business at 9076 Madison Boulevard, Madison, Alabama.  Blair may be served through its officers or agents at that address.

11.    Defendant Tri Staffing is an Alabama business with its principal place of business at 8760 Madison Boulevard, #G, Madison, Alabama 35758.  Tri Staffing may be served through its officers or agents at that address.

3

12.    The Plaintiff alleges, upon information and belief, that Defendant The Job Center is an Alabama business whose current whereabouts are unknown to the Plaintiff.

13.    The Defendants are subject to the jurisdiction of this court.

14.    This Court has subject matter jurisdiction as a federal question, pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1964(a) and (c).

15.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), as Defendants reside in this district and the events giving rise to Plaintiff's claims occurred in this district.  Venue is also proper in this district pursuant to 19 U.S.C. § 1965, as Defendants reside in, are found in, and transact their affairs in the Northern District of Alabama.

## FACTS
## Cinram's Hiring and Harboring of Unauthorized Workers

16.    Cinram employs over 1,100 hourly paid workers in its operations in Alabama.  Many of Cinram's employees are referred to it by the Defendants Blair, Tri Staffing, and The Job Center.  The workers come from various countries, including Nepal, Bolivia, Ukraine, Dominican Republic, and Jamaica.

17.    In an effort to keep labor costs as low as possible, Cinram has engaged in the illegal hiring of persons who are not eligible for employment in the United States.

4

18.    Cinram has accepted for employment and continued to employ workers that it know or has reason to know were not authorized to work in the United States.

19.    Cinram has knowingly and recklessly accepted as proof of eligibility for employment false documents that do not match the identity of the person presenting them, and has directed unauthorized workers to specific staffing agencies to obtain false employment eligibility documents.

20.    Cinram was and is aware of, and in fact encouraged, the use of false work eligibility documents for numerous employees.

21.    Cinram supervisors are aware that unauthorized workers can and do easily obtain false identification and work eligibility documents.

22.    Cinram has provided various incentives to staffing agencies for locating unauthorized aliens that Cinram eventually employs and harbors.  The incentives include payment of fees.  These staffing agencies include "Tri Staffing" in Madison, Alabama; "Blair Staffing" in Madison, Alabama; and "The Job Center." (hereafter "Staffing Agency Defendants")

23.    These Defendants participated in an enterprise with Cinram in which they, like Cinram, either hired employees who were then assigned to work at Cinram, or were referred for employment to Cinram.  Like Cinram, the staffing agencies endeavored to keep labor costs as low as possible and engaged in the

hiring or referral of individuals to Cinram for employment who were not eligible for legal employment in the United States.   Like Cinram, they accepted for employment and continued to employ workers, or referred to Cinram employees who it knew or should have known were not authorized to work in the United States.   These Defendants, like Cinram, knowingly and recklessly accepted as proof of eligibility for employment false documents that did not match the identity of the person presenting them In addition, they knowingly accepted as employees or referred employees to Cinram without proper social security documents or without properly verifying the identification documents provided by the employees.   The Defendants failed to verify identification provided by unauthorized workers, including failure to verify social security numbers and accepted and hired applicants without otherwise confirming the identification presented.

24.   Cinram employees and supervisors have assisted unauthorized workers in attempting to evade detection by law enforcement personnel.   Plaintiff alleges, upon information and belief, that the Defendant staffing agencies engaged in the same conduct.

25.   Cinram supervisors prefer hiring unauthorized workers for several reasons.   Unauthorized workers do not complain about working conditions or submit claims for workers' compensation.   Unauthorized workers do not enjoy the

full measure of protection accorded authorized workers under United States labor laws. Cinram has fired unauthorized workers for complaining about on-the-job injuries and not meeting production demands and then rehired, via the above-named staffing agencies, those same individuals weeks later with new and different false documents. In addition to establishing that Cinram's hiring of unauthorized workers is done with full knowledge and with complete disregard of the law, this shows that Cinram's intent is to send a message to other unauthorized workers that they are to work hard and not complain about conditions, or else they will be fired. The actions of the staffing agency defendants are part of the enterprise by which this was accomplished.

26. Cinram's employment and harboring of large numbers of unauthorized workers has enabled Cinram to depress wages and thereby to pay all of its hourly employees wages that are lower than they would be if Cinram did not engage in this illegal conduct, thus inflating Cinram's profit margin. The actions of the staffing agency defendants are part of the enterprise by which this was accomplished.

27. Cinram's employment and harboring of large numbers of unauthorized workers has resulted in the denial of employment opportunities for legally authorized workers. Moreover, Cinram's unauthorized workers have been subject to unfair and inappropriate treatment and unfair and inappropriate contracts

that resulted from their unauthorized status and of which Cinram, Blair, and the other Defendants were the beneficiaries. The actions of the staffing agency defendants are part of the enterprise by which this was accomplished.

28.     Cinram's employment of and harboring of unauthorized workers has substantially and unlawfully increased the supply of workers from which Cinram makes up its hourly workforce. This unlawful expansion of the labor pool has permitted Cinram to depress the wages that it pays all its hourly workers. If Cinram complied with the law by limiting its hourly workforce to those workers authorized to work in the United States, Cinram would have had to pay higher wages to legally authorized workers. The actions of the staffing agency defendants are part of the enterprise by which this was accomplished.

29.     One purpose and intended effect of Cinram's widespread employment and harboring of unauthorized workers is to deprive Cinram's hourly workforce of any individual or collective bargaining power. Because Cinram knows that many of its workers are not authorized to reside or work in the United States, Cinram knows those that those unauthorized workers are beholden to Cinram. Cinram is further aware that its unauthorized workers have virtually no effective means to complain about the terms of their employment. The actions of the staffing agency defendants are part of the enterprise by which this was accomplished.

30.    Cinram is also aware that its unauthorized employees are unlikely to file worker's compensation claims against Cinram.  As a direct and proximate result of Cinram's employment and harboring or unauthorized workers, Cinram has been able to save substantial sums of money in workers' compensation liability that it would have incurred if it had not violated the law.

31.    As a direct and proximate result of Cinram's employment and harboring of unauthorized workers, Plaintiff and all members of the class have been damaged via lost wages, which they would have earned had Cinram complied with the law.

### Class Allegations

32.    Plaintiff brings this action on behalf of all qualified persons who are legally authorized to be employed in the United States who were employed by Cinram or who were referred for employment by any of the staffing agency defendants at any time from February 22, 2004 to the present (the "Class").  The "Class Period" is from February 22, 2004 to the present.

33.    The Class is so numerous that joinder of all Class members is impracticable.  Plaintiff believes that the Class contains many hundreds of members, and the actual number of Class members can be ascertained through discovery.

34.     There are numerous questions of law and fact common to the Class.

Those questions include, but are not limited to:

A.      How many persons who are not authorized to be employed in the United States has Cinram employed during the Class Period?

B.      Has Cinram knowingly or with reckless disregard employed workers who are not authorized for employment in the United States during the Class Period?

C.      Have Staffing Agency Defendants knowingly or with reckless disregard employed or referred for employment to Cinram workers who were not authorized for employment in the United States?

D.      Have Staffing Agency Defendants knowingly or with reckless disregard employed workers or referred workers to Cinram for work who are not authorized for employment in the United States during the Class Period?

E.      Whether Defendants knowingly or with reckless disregard harbored unauthorized aliens in the United States in violation of federal law during the Class Period.

F.      To what extent have Defendant's employment, referral for employment, and harboring of persons who are not authorized to be employed in the United States depressed wages or otherwise adversely affected working conditions other workers?

G.      Are Defendants part of an "enterprise" under the RICO Act?

H.      Are Defendants engaged in a pattern of racketeering activity under the RICO statute?

I.      How many persons who are not authorized to be employed in the United States have the staffing agencies employed or referred for employment during the class period?

35.    The claims of the Plaintiff are typical of the claims of the Class. Plaintiff is a qualified current and/or former employee of Cinram whose wages have been depressed by Defendants' actions, including employment, referral for employment, or harboring of unauthorized workers.  Plaintiff has no interests that are antagonistic or adverse to the other Class members.

36.    Plaintiff was injured by direct and proximate reason of Defendants' illegal conduct.

37.    Plaintiff will fairly and adequately protect the interests of the Class.

38.    Plaintiff is an adequate representative of the Class. Plaintiff is authorized for employment in the United States and is currently, or was during the relevant period, employed by Cinram.

39.     Plaintiff has retained counsel who are experienced in class action litigation, RICO litigation and complex litigation.  Accordingly, Plaintiff will fairly and adequately protect and represent the interests of the Class.

40.    Plaintiff seeks certification of a class, alternatively, under Fed. R. Civ. P. 23(b) or 23(b)(3), or a combination thereof.

41.    Cinram's employment and harboring of unauthorized workers has the effect of denying wages and benefits to the detriment of all members of the Class. Accordingly, declaratory and injunctive relief that prevents Cinram from continuing to employ or harbor unauthorized workers and the Staffing Agency

Defendants from employing or referring for unauthorized workers for employment is appropriate on a class wide basis.

42.     The questions of law and fact common to all members of the Class predominate over any questions that may affect only individual members of the Class.

43.     A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and create the risk of inconsistent results.

44.     Given the significant expense required to prosecute the foregoing claims against Defendants, the costs of individual actions would exceed or consume the amount recovered in any individual action.  The expense of pursuing individual actions will require individual members of the Class to forego their individual claims against Defendants if they are not permitted to pursue those claims as a class.

45.     Plaintiff is not aware of any litigation concerning this controversy that has already been initiated by or against any members of the Class.

46.     This action is manageable because the evidence proving that Defendants are engaging in the alleged conduct is common to the Class. Furthermore, the identities of the Class members are known to Cinram.

### Defendants Have Engaged in a Pattern
### of Racketeering Activity

47.   Defendants  have engaged in an ongoing pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

48.   The RICO pattern of racketeering activity engaged in by Defendants consists of more than two acts of racketeering activity, the most recent of which occurred within ten years after the commission of a prior act of racketeering activity.

49.   Defendants' racketeering activity includes an open and ongoing pattern of violations of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324(a).

50.   Specifically, Defendants have violated and continue to violate 8 U.S.C. § 1324(a)(3)(A), which makes it a federal crime to: "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens…" during a 12-month period.  Cinram has violated this provision on the Act, including by employing more than 10 aliens per year each year for the last four years, knowing that each such person was (a) smuggled or otherwise brought into the United States in violation of U.S. law; (b) illegally harbored once in the United States; (c) not lawfully admitted to the United States for permanent residence and/or; (d) not authorized for employment in the United States.

13

51.    Defendants have violated and continue to violate 8 U.S.C.§ 1324(a)(1)(A)(iii), which makes it a federal crime to "conceal,[], harbor[] or shield from detection, or attempt[] to conceal, harbor or shield from detection…" aliens who have entered the United States illegally.  Cinram has violated the provision by (a) knowingly employing unauthorized aliens within its facilities in Alabama and/or (b) taking steps to shield those unauthorized aliens from detection, by, among other things, assisting them in obtaining false employment authorization documents and helping them evade detection during law enforcement searches and inspections.

52.    Furthermore, Defendants have violated and continue to violate 8 U.S.C.§  1324(a)(1)(A)(iv),  which prohibits any person or entity from "encourage[ing] or induc[ing] an alien come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry or residence is or will be in violation of the law[.]"  By knowingly or recklessly employing and harboring unauthorized aliens in its Alabama facilities, Defendants have helped hundreds of aliens avoid detection and enabled them to remain in the United States in violation of U.S. law.

53.    Each violation of 8 U.S.C. § 1324 constitutes an act of "racketeering activity" under the RICO Act, 18 U.S.C. § 1961(F).

54. Defendants' racketeering activity also includes open and ongoing violations of 18 U.S.C. §1546(a), including Cinram's acceptance of identification documents and other documents that authorize employment in the United States that Defendants knew or had reason to know were not lawfully issued for the bearer's use, were false and/or were obtained by false statements.

55. Defendants have also violated and continues to violate 18 U.S.C. § 1546(b) by using identification documents that Defendant new or had reason to know were not lawfully issued to the bearer to falsely verify the eligibility of the persons presenting them to work at Cinram, and recording information from those documents on I-9 forms.

56. Each violation of 18 U.S.C. § 1546 constitutes "racketeering activity" under the RICO Act.

**The Acts of Racketeering Activity Committed by Defendants Are Related**

57. The acts of racketeering activity committed by Defendants have the same or similar methods of commission in that they involve the knowing employment of unauthorized workers, the concealment, harboring and shielding from detection of unauthorized workers, and the encouragement and acceptance or use of fraudulent documents in connection with the hiring of unauthorized workers.

58.     The acts of racketeering activity committed by Defendants have the same or similar objectives: the reduction of wages paid to Cinram's workforce, the increase of profits to Cinram, or fees to be paid to the Staffing Agencies.

59.     The acts of racketeering activity committed by Defendants have the same of similar victims, including the Plaintiff and the other members of the Class.

60.     The acts of racketeering activity committed by Defendants are otherwise related by distinguishing characteristics including, but not limited to, the involvement of Cinram, the staffing agency defendants, workers, and other members of the association-in-fact enterprise identified in paragraphs 61-68.

## The Acts of Racketeering Activity Committed by Defendants Involve a Distinct Threat of Long-Term Racketeering Activity

61.     Defendants' acts of racketeering activity involve a distinct threat of long-term racketeering activity.

62.     Defendants practice of knowingly employing, harboring, concealing and shielding unauthorized workers and Defendants' encouragement and acceptance or use of documents that are not lawfully issued for the use of the possessor or are false has continued for years, in ongoing at the present time and will continue into the future unless halted by judicial intervention.

63.     Defendants' knowing employment, harboring, concealment and shielding of unauthorized workers and its encouragement and acceptance or use of

documents that are not lawfully issued for the use of the possessor or are false is part of its regular and customary way of conducting business.

64. Cinram has committed hundreds of violations of 8 U.S.C. § 1324 and 18 U.S.C. § 1546 a part of its patter of racketeering activity. Staffing Agency Defendants have committed multiple violations as well.

65. Cinram's knowing employment, harboring, concealment and shielding of unauthorized workers and its encouragement and acceptance or use of documents that are not lawfully issued for the use of the possessor or are false is so pervasive that unauthorized workers now constitute an overwhelming majority of the work force at Cinram's Alabama facilities.

### The Enterprise

66. Cinram has engaged in an open and ongoing pattern of violations of 8 U.S.C. § 1324 and 18 U.S.C. § 1546 throughout the last four years through its participation in an association-in-fact enterprise with the Staffing Agency Defendants and other recruiters that supply Cinram with unauthorized workers. Each staffing agency is compensated for each worker it supplies to Cinram.

67. The recruiters, Cinram and the staffing agencies share the common purpose of obtaining unauthorized workers for employment by Cinram. The enterprise has worked in this fashion continuously over at lease the last four years.

68.    Cinram participates in the operation and management of the affairs of the enterprise, which exists for Cinram's benefit and the benefit of the Staffing Agency Defendants.

69.    This association of recruiters, Cinram and the Staffing Agency Defendants constitutes an association-in-fact enterprise pursuant to 19 U.S.C. § 1961(4).The enterprise affects interstate commerce in that the unauthorized workers employed by Cinram travel in international and interstate commerce in order to reach Cinram facilities in Alabama.  The enterprise also affects interstate commerce in that Cinram, a member of the enterprise, is directly engaged in the production, distribution and acquisition of goods and services in interstate commerce.   The enterprise affects interstate commerce in that it reduces the income of the legal workers who are still part of the Cinram hourly workforce. Moreover, the enterprise affects interstate commerce by allowing unscrupulous entities not necessarily involved in the conspiracy to overcharge the unauthorized workers for goods and services they provide due to fear of revelation of the unauthorized status of the employees.

70.    Cinram and the Staffing Agency Defendants accepted and retained the benefits of the acts of racketeering activity, thereby ratifying the conduct of its managers, employees and the members of the enterprise who assisted it in committing those acts of racketeering activity.

**Cinram has Caused Wages to be Depressed**

71.    Defendants' violations of the RICO Act have proximately caused the wages of the Plaintiff and all other members of the Class to be depressed below what they would have been in a labor market comprised of legally employed workers.

72.    Plaintiff and members of the Class have suffered an injury to their "business or property," *i.e.* lost wages, as a direct result of Defendants' violations of RICO.

73.    Defendants' unlawful conduct has allowed Defendants  to earn or retain significant funds to which it is not entitled.   For example, Defendants' widespread employment of unauthorized workers has permitted Defendant to depress wages and to reduce the expenses it incurs as a result of worker's compensation claims.  These savings contribute to Defendants' profit margins and provide the financial incentive for Defendants' hiring of unauthorized workers.

74.    The above and foregoing allegations are based upon information and belief, personal knowledge of the Plaintiff, and investigation of counsel.

## COUNT I
### Violation of 18 U.S.C. § 1962(c)

75.    Plaintiff realleges and incorporates by reference herein the allegations set forth in the preceding paragraphs as if fully restated hereinafter.

76.     The foregoing conduct constitutes a violation of 18 U.S.C. § 1962(c).Plaintiff and members of the Class have been injured in their property by reason of Defendants' violations of 18 U.S.C. § 1962(c).

77.     The injuries suffered by Plaintiff and members of the Class were caused by Defendants' violations of 19 U.S.C. § 1962(c).

78.     Pursuant to 18 U.S.C. § 1964(c), Plaintiff and members of the Class are entitled to recover threefold damages they have sustained and their costs of suit, including reasonable attorney's fees.

## COUNT II
## Common Law Negligence

79.     Count II is asserted in the alternative to Count I.

80.     Plaintiff realleges and incorporates by reference herein the allegations set forth in the preceding paragraphs as if fully restated hereinafter.

81.     The Defendants' employment and harboring of unauthorized workers has had the purpose and effect of depressing the wages paid to Cinram's hourly workers who are eligible for employment in the United States.  Defendants' conduct therefore has the effect of permitting Cinram to reap substantial wage savings.

82.     Cinram's employment and harboring of unauthorized workers also has had the effect of reducing the number of worker's compensations claims that Cinram receives.  Cinram's conduct therefore is intended to and has had the effect

of permitting Cinram to limit the amount it must spend to respond to worker's compensation claims.

83.    The savings that Cinram has been able to achieve and continues to achieve through its employment and harboring of unauthorized workers have been unjustly and inequitably conferred on Cinram at the expense of its hourly workers who are authorized for employment in the United States, including Plaintiff and all other members of the Class.   These cost savings permit Cinram to earn larger profits than it would be able to earn if it did not employ and harbor unauthorized workers.

84.    Cinram or the Staffing Agency Defendants negligently caused, allowed, or continued to allow unauthorized workers to work when a reasonable employer or reasonable employment agency would have known that the continued employment of unauthorized workers was inappropriate.   The Defendants had a duty to refrain from such conduct.   The Plaintiff and all other members of the Class were damaged thereby.   Defendants should be enjoined from future violations and pay damages as determined by the trier of fact.

### **Prayer for Relief**

Plaintiff demands judgment and other relief as follows:

A.    Certification of a Class pursuant to Fed. R. Civ. P. 23;

B.    Judgment in an amount equal to three times the actual damages sustained by the Class, pursuant to 18 U.S.C. § 1964(c);

C.      Reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

D.      Judgment in an amount to be proven at trial that requires Defendants to disgorge any unlawful profits or otherwise return the full amount of its unjust enrichment;

E.      Trial by jury; and

F.      Such other relief as the Court deems just and proper.

This the 26 day of February, 2008.

Respectfully Submitted,


_____
Glen M. Connor